104 So.2d 428

**STATE of Louisiana**

**v.**

**Arthur G. MILLS.**

No. 44062.

June 27, 1958.

Byrnes & Wallace, Nestor Mills, New Orleans, for relator.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Richard Dowling, Dist. Atty., New Orleans, for respondent.

FOURNET, Chief Justice.

Arthur G. Mills, having been found guilty of contempt because of his failure to appear before the Orleans Parish Grand Jury in answer to a subpoena dated December 26, 1957, and sentenced to serve ten days in the Orleans Parish Prison and to pay a fine of $100, in default of which he was to serve an additional ten days, and having made a showing that he was never served with a subpoena as required by RS 15:146,[1] which is a prerequisite for a valid attachment to issue under RS 15:147,[2] we granted his application for alternative writs of certiorari and prohibition, with a stay order.

The record discloses that on December 26, 1957, a subpoena was issued ordering one Arthur Mills of 2833 Pine Street to appear as a witness before the Orleans Parish Grand Jury the following day. This address proved to be an empty house and, later on in the day, the subpoena was left on the porch at 3114 Nashville Avenue, the return carrying the notation that it had been served on "Mrs. Mills (wife at Dom)."[3] On December 30, 1957,[4] an attachment was

1. RS 15:146 provides that "The service of subpoenas, unless otherwise directed by the party ordering the same, shall be either domiciliary or personal. If the service be domiciliary, the subpoena must be left at the place where the witness resides, in the hands of a person apparently over the age of fourteen years and who lives at the domicile of the witness."

2. RS 15:147 provides: "A witness who fails to appear in obedience to a subpoena may be attached; provided that no witness who shall have been brought into court by attachment shall be liable to any penalty where it shall appear that the subpoena did not actually come into his hands, or that he had no knowledge of having been summoned."

3. The officers asked only if she was Mrs. Mills. She was not questioned as to an Arthur G. Mills, or whether he was domiciled there. No further effort was made to locate or serve Arthur G. Mills under this subpoena summoning as a witness Arthur Mills of 2833 Pine Street.

4. It appears a previous attachment had been issued bearing this same date (December 30, 1957) for the arrest of one Arthur Mills at 3114 Nashville Avenue,

issued ordering the arrest of Arthur G. Mills,[5] the relator, for appearance in court on January 3, 1958, to answer for contempt for failing to obey the subpoena issued to Arthur Mills of 2833 Pine Street dated December 26, 1957. This attachment was not served until January 8, 1958, and then on Arthur C. Mills, a son of the relator, at 3114 Nashville, the domicile of the son. Despite his protestation that he was not Arthur G. Mills and that Arthur G. Mills did not live at that address, he was taken in on order of the district attorney, who had been reached by telephone. After, as the trial judge states in his written reasons for judgment, it had been *"ascertained that defendant in rule* (to show cause why he should not be ruled in contempt for failing to appear as a witness pursuant to the subpoena dated December 26, 1957) *was named Arthur G. Mills, and that he lived at 5800 Bancroft Drive,* another attachment issued on January 8, 1958, returnable on January 15, 1958." However, this *attachment* was never served, as the deputies could find no one at home at the Bancroft address. (The emphasis has been supplied and the words within brackets added.)

The relator—who had not lived at 3114 Nashville Avenue since early in June of 1957,[6] had been staying with a brother who lived at Lacombe, Louisiana, since January 2, 1958, and had not returned to the city until around February 21, 1958—voluntarily appeared in court on February 27, 1958, after he had been apprised of the fact that a contempt summons with supporting attachment had been issued for him. He was, at that time, paroled until March 5, 1958. When he appeared on that day, a rule to show cause why he should not be held in contempt for failing to appear before the grand jury under the subpoena issued to one

---

commanding his appearance on January 3, 1958, to answer for contempt, but no service was made of this attachment as, according to the deputy's notation, only a babysitter was found at that address.

5. The address at the top of this order is 3114 Nashville, but this is crossed out and the address 5800 Bancroft Drive is inserted. However, this return shows no service was ever attempted at the second address. Instead, as the trial judge points out, a new order was issued on January 8, 1958.

6. It appears the relator moved away from 3114 Nashville Avenue early in June of 1957 to a camp he owned at Little Woods, on the outskirts of the city, and, from there, moved into the house at 5800 Bancroft Drive on October 22, 1957; further, that on January 2, 1958, he went to stay with a brother in the country at Lacombe, Louisiana, for a couple of months, returning to the Bancroft address the latter part of February. In the meanwhile, he had sold the Nashville property to his son Arthur C. Mills, the act of sale being passed in August of 1957. The property then underwent renovation and the son moved into the house early in November of 1957. He was the Mills domiciled there at the time one Arthur Mills of 2833 Pine Street was sought to be subpoenaed on December 26, 1957, through service on Mrs. Arthur C. Mills, he being away from the city at the time.

Arthur Mills on December 26, 1957, was presented to him and the rule was tried immediately, the trial judge taking the matter under advisement following the conclusion of the evidence. On April 14, 1958, the trial judge adjudged him guilty of contempt, being of the opinion the relator had knowledge that he was the same person subpoenaed and sought to be served as Arthur Mills at 3114 Nashville Avenue. Sentence followed on April 16, 1958.

It is within the inherent power and authority of every court to enforce the orders which it has the power to render, and to punish those who show contempt for its authority by flouting these orders. Disobedience of a subpoena to appear as a witness before the grand jury is contumacious, and the power of the court to punish for such contempt is clear. However, under the express provisions of RS 15:11, "* * no one shall be punished for any contempt committed outside of the presence or hearing of the court, except after hearing upon a rule to show cause why he should not be punished for such contempt, served upon

him at least twenty-four hours before such hearing." [7] Moreover, it is only when the subpoena summoning the person sought to be a witness has been served in conformity with the provisions of RS 15:146, i. e., served on the one subpoenaed either personally or at his domicile by being left in the hands of one over the age of fourteen living . at the domicile with the person subpoenaed (in the absence of other directions by the person ordering the issuance of the subpoena), and the witness thereafter fails "to appear in obedience to [such] subpoena," that he may be attached and brought into court to answer for contempt as provided in RS 15:147. See, 97 C.J.S. Witnesses §§ 27 and 29, pp. 400 and 414; 13 C.J. 24, Section 30; 17 C.J.S. Contempt § 23; 70 C.J. 35, 38–63, Sections 5, 22, 23, 26, 44, and 50; 97 C.J.S. Witnesses §§ 6, 20, 23, 27 & 29; 58 Am.Jur. 30, Section 14; State v. Boitreaux, 31 La.Ann. 188; State v. Briggs, 34 La.Ann. 69; State v. Thornton, 49 La.Ann. 1007, 22 So. 315; State ex rel. Alverson v. Sommerville, 105 La. 273, 29 So. 705; State v. Stewart, 117 La. 476, 41 So. 798; State

7. Although the record discloses the relator was never served with a formally drawn rule to show cause why he should not be adjudged guilty of contempt until he appeared in court on March 5, 1958, it also discloses he had knowledge he was being sought to answer contempt charges when he appeared in court February 27, 1958, and that the court bound him over until March 5, 1958, more than twenty-four hours later, and that on that day when the judge asked if both sides were ready to go to trial, his attorneys signified they were, producing all of the witnesses they apparently felt necessary to sustain relator's case, and which they had then present in court. It would seem, therefore, that the relator waived whatever right he may have had to urge the failure to serve him with the rule to show cause twenty-four hours previous to this hearing. See, 17 C.J.S. Contempt § 79 and 81, p. 101; 12 Am.Jur. 437, Section 69.

v. Black, 232 N.C. 154, 59 S.E.2d 621; Cheney v. Cheney, 255 App.Div. 302, 5 N.Y.S. 2d 744; Otto v. Levy, 244 App.Div. 349, 279 N.Y.S. 462; Bowman Dairy Co. v. U. S., 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879, 881; Pinsker v. Williams, Brown & Earle, Inc., 4 Pa.Dist. & Co.2d 779.

■ From the facts as given above, it is obvious that no subpoena was ever issued commanding the relator, Arthur G. Mills, to appear as a witness before the Orleans Parish Grand Jury, and that the only subpoena that was issued ordered one Arthur Mills of 2833 Pine Street to appear as a witness. This was never served on Arthur G. Mills, either personally or at his domicile. He was not, therefore, guilty of contempt, for, as was very aptly observed in Corpus Juris Secundum, "In order to subject a witness to the penalty of contempt for disobedience to a subpoena he must have been legally summoned; hence, if the subpoena, or the service thereof, was so defective or irregular as to impose on him no duty to obey it, he cannot be punished for contempt." Volume 97 at page 400. Witnesses § 27.

For the reasons assigned, the alternative writs of certiorari and prohibition are made peremptory, and it is ordered, adjudged, and decreed that the judgment of the lower court be annulled and set aside, and that the relator be discharged.